684 So.2d 1128 (1996)
Denise Blanchard SERRATE
v.
Carlos A. SERRATE.
No. 96 CA 1545.
Court of Appeal of Louisiana, First Circuit.
December 20, 1996.
*1129 Benjamin P. Mouton, Baton Rouge, for Plaintiff-Appellee.
Alan S. Fishbein, Baton Rouge, for Defendant-Appellant.
Before WATKINS and KUHN, JJ., and GUIDRY,[1] J. Pro Tem.
WATKINS, Judge.
The defendant-appellant, Mr. Carlos A. Serrate, appeals a judgment ordering the payment of $5,166.67 in past due child support and further ordering child support increased from $1,000.00 per month to $1,700.00 per month. We amend in part, and affirm as amended.

FACTS
On September 1, 1995, plaintiff-appellee Denise Blanchard Serrate, filed suit to have a 1985 judgment of child support made executory, and for a modification of child support. An ex parte order making the 1985 judgment executory was signed by the trial court on September 1, 1995. Thereafter, plaintiff filed a petition for payment of child support arrearage. The matters were consolidated and a hearing was held on November 14, 1995.
Mr. and Mrs. Serrate were divorced sometime before March 1985, and apparently Mrs. Serrate was granted sole custody of their two children, Robert Anthony Serrate and Michael Bradley Serrate. On June 13, 1985, judgment was signed in the Twenty-Fourth Judicial Court for the Parish of Jefferson in favor of Mrs. Serrate, ordering Mr. Serrate to pay the amount of $1,000.00 per month in child support. The children resided primarily with Mrs. Serrate until October, 1991, when the eldest son, Robert, moved to Kentucky and resided with his father. Mr. and Mrs. Serrate agreed that the child support obligation would be reduced by $500.00 per month. In January of 1992, it was agreed *1130 that Bradley would also go to live with his father and brother. Mrs. Serrate agreed she would not receive further child support until either or both of the children returned to live with her. In May of 1993, Robert graduated from high school and returned to Baton Rouge to live with his mother until he started college in August 1993. Robert turned 18 on September 14, 1993. Bradley also spent the summer months (June, July, August) of 1993 with his mother. He returned to live with his father in August of 1993. He resided primarily with his father until November 1994, when his father requested that he remain at his mother's home during a routine visit. Mr. Serrate began paying Mrs. Serrate $600.00 per month child support, which he contends was the agreement of the parties at the time Bradley began residing with his mother. However, Mrs. Serrate testified she agreed to accept $600.00 per month child support until she could determine what her additional expenses would be. After Bradley completed the school year at Bishop Sullivan High School in 1995, Mrs. Serrate informed Mr. Serrate by registered letter in July 1995, that he should resume paying child support in the amount of $1,000.00 per month. Mr. Serrate refused and continued paying $600.00 per month in child support.
The trial court awarded Mrs. Serrate arrearages in the amount of $5,166.67, and further ordered that child support be increased to $1,750.00 per month, retroactive to September 1, 1995, with a credit of $1,000.00 per month for partial payments made in September and October of 1995.[2] When asked to explain how it determined the amount of arrearages, the court stated that "[i]t was $500.00 per month for May of 1993, $466.67 for September of 93, $1,000.00 each for the months of June, July and August of 1993, and $1,200.00 for August, September and October of 1995."
Based upon these comments, we conclude that the court intended to award Mrs. Serrate child support arrearages for Robert, at $500.00 per month from May 1993, until September 14, 1993, and for Bradley, $500.00 per month from June 1993, through August 1993, and an additional $400.00 per month from August 1995, through October 1995. We note that the $466.67 figure awarded by the court for September 1995, apparently represents child support for Robert during the 14 days of September before he turned 18 years old. However, as pointed out in brief by the appellee, this was a mathematical error because the court apparently calculated the 14 days of child support based on a $1,000.00 monthly support obligation instead of $500.00. Because only Robert was technically residing with his mother during this time, Mr. Serrate was obligated to pay only for 14 days based on a monthly support obligation of $500.00, which results in a total of $233.33 for September, 1995.[3]

ASSIGNMENTS OF ERROR
Mr. Serrate appealed from the judgment alleging, that the trial court erred in ordering him to pay child support arrearages in the amount of $5,166.67, and that the court was manifestly erroneous in increasing his child support obligation to $1,750.00 per month.
Mr. Serrate contends that the trial court erred in its determination that Mrs. Serrate was entitled to child support during the summer months of 1993, because he was the primary custodial parent of both children at that time and therefore Mrs. Serrate was not entitled to child support during the summer months that the boys resided with her. He further asserts that the trial court erred in determining that Mrs. Serrate was entitled to $1,000.00 per month for August, September and October of 1995, because he and Mrs. Serrate had agreed that the support obligation would be $600.00 per month when Bradley returned to live with his mother in November 1994.
The general rule in Louisiana is that a child support judgment remains in full *1131 force until the party ordered to pay it has the judgment modified, reduced or terminated by a court. Halcomb v. Halcomb, 352 So.2d 1013, 1015-16 (La.1977). However, our courts have recognized that a judgment awarding child support can be modified extrajudicially by agreement of the parties. Such an agreement must meet the requisites of a conventional obligation and the evidence must establish the parties have agreed to waive or to otherwise modify the court-ordered payments. Dubroc v. Dubroc, 388 So.2d 377, 380 (La.1980). Furthermore, the agreement must foster the continued support and upbringing of the child; it must not interrupt the child's maintenance or upbringing, or otherwise work to his detriment. Dubroc, 388 So.2d at 380. The party seeking to modify his obligation under the judgment has the burden of proving the existence of such an agreement. Trisler v. Trisler, 622 So.2d 730, 731 (La.App. 1st Cir.1993).
In the instant case, Ms. Serrate does not dispute that the parties modified the original award of support as circumstances changed. Therefore, the issue is what was the agreed upon modification. The following testimony was given by Mrs. Serrate with regard to the agreement with Mr. Serrate concerning child support when Bradley went to live with his father in January 1992:
We agreed, we went through a counselor here in Baton Rouge, Marcia Cox, and we came to an agreement that during the months he was in school with his dad that his dad would not pay me any child support and he would take care of all of Brad's financial needs from that point on until the time he would return to live with me either in the summer months or return to live with me permanently....
It [the agreement] was in place for both [children] because Robbie the oldest was in tenth grade and we had decided that he would trythey put him in a boarding school, Carlos, his dad put him in boarding school and it was determined that if ever either one of the children or both would return to live with me that child support that was awarded back in 1985 would resume.
Mrs. Serrate also testified about the agreement concerning the amount of child support she would receive when Bradley came to live with her in November of 1994:
I agreed that Brad would live with me and that I would assess his financial needs and that we would get together and discuss anythingI agreed to 600, that he would send me $600.00 a month as he agreed in the past and that after I would assess his financial needs and the new school and the new home and all that we would get in touch with each other and we would discuss it....
In July of 1995 I sent him a registered letter and let him know what thethat Brad's expenses, what they were, and I said that he neededI felt he needed to resume sending the child support that was awarded back in 1985.
An appellate court may not overturn a factual finding of the trial court unless we find: (1) a reasonable factual basis for the trial court's finding does not exist in the record and (2) the record establishes that the finding is clearly wrong. Stobart v. State of Louisiana through Department of Transportation and Development, 617 So.2d 880 (La. 1993). The issue to be resolved by this court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart, 617 So.2d at 882. Thus, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 883. Our examination of the record reveals two permissible views of the evidence; accordingly, we find no error in the trial court's award of past due child support with the exception of the mathematical error for the amount owed for Robert in September 1995.

INCREASE IN CHILD SUPPORT
Mr. Serrate also contests the portion of the trial court judgment increasing his child support obligation to $1,750.00 per month. He asserts that the trial court erred in failing to provide oral or written reasons for judgment, and further contends that the expenses *1132 submitted by Ms. Serrate were inflated and unsubstantiated.
A party seeking a modification of a child support award must show a substantial change in circumstances between the time of the previous award and the time of the motion for modification. LSA-R.S. 9:311(A); Preis v. Preis, 93-569 (La.App. 3d Cir. 2/2/94), 631 So.2d 1349. Once a substantial change in circumstances is established, LSA-R.S. 9:315.1(A) provides that the "guidelines set forth in this Part are to be used in any proceeding to establish or modify child support filed on or after October 1, 1989." Richardson v. Richardson, 590 So.2d 1302 (La.App. 1st Cir.1991). A trial court has considerable discretion in the modification of support awards and its determination will not be disturbed on review unless the record reveals a clear abuse of discretion. Lloyd v. Lloyd, 94-0421 (La.App. 1st Cir. 12/22/94), 649 So.2d 32, 35; Rosenbloom v. Rosenbloom, 94-1762 (La.App. 4th Cir. 4/26/95), 654 So.2d 877, writs denied, 95-1320 (La.9/1/95), 658 So.2d 1266.
According to the guidelines the court must determine the combined adjusted monthly gross income of the parents and assign a percentage of the total to each according to their proportionate share of the combined income. The schedule in LSA-R.S. 9:315.14 is then utilized to find the basic child support obligation. To this figure the court must add the net child care costs and the cost of health insurance premiums incurred on behalf of the child. The court may also add extraordinary medical expenses of the child, the expenses for attending a special or private school to meet the child's particular needs, and expenses for transportation of the child from one parent to the other, and may deduct certain income of the child. LSA-R.S. 9:315.2-315.8.
If the combined adjusted gross income of the parties exceeds $10,000.00 per month, the highest level specified in the schedule, "the court shall use its discretion in setting the amount of the basic child support obligation, but in no event shall it be less than the highest amount set forth in the schedule." LSA-R.S. 9:315.10. The highest amount in the schedule for one child is $1,059.00.
Herein the trial court gave no reasons for its award except its statement that "the court must consider the reasonable needs of the child involved." Although the guidelines only require the trial court to award no "less than the highest amount set forth in the schedule" in cases where the combined adjusted gross income of the parties exceeds $10,000.00, there must be an evidentiary basis for the court's award.[4]
During the hearing of this matter, Mrs. Serrate testified that at the time of the 1985 child support award she had sole custody of their two sons, and that Mr. Serrate was earning approximately $55,000.00$60,000.00 per year. The evidence further showed that Mr. Serrate is presently earning between $10,911.00[5] and $13,000.00 per month, and Mrs. Serrate's gross monthly pay is $2,850.00 per month. Mrs. Serrate testified that she incurs $2,001.33 in monthly living expenses for the support of Bradley.
Mr. Serrate raises several questions with regard to expenses submitted by Mrs. Serrate for Bradley. First, he contends that the $200.00 per month vacation expense and $150.00 per month automobile repair expense are not the type of expenses which should be considered in a child support award. Second, Mr. Serrate contends that Mrs. Serrate *1133 failed to prove that a private school was necessary to meet a particular educational need for Bradley, as required in LSA-R.S. 9:315.6(1).
We have reviewed similar cases wherein the combined adjusted income of the parties exceeds $10,000.00 per month, and conclude that there is no universal mathematical formula that can be applied.[6] Rather, in the application of discretion the court must consider the needs of the child and the circumstances of those who are obligated to pay. Rosenbloom, 654 So.2d at 879. In arriving at an award, the totality of relevant circumstances must be considered. Seal v. Bell, 464 So.2d 1026 (La.App. 1st Cir.1985).
The evidence reveals that the highest monthly income shown for Mr. Serrate was $12,940.37, thus making the combined adjusted income of the parties $15,745.37 ($12,940.37 + $2,805.00). Accordingly, Mr. Serrate's share of the child support obligation is 82% and Mrs. Serrate's is 18%. According to the guidelines the child support for one child based on a combined income of $10,000.00 is $1059.00. We use this as a starting point and add to that figure the amounts Mrs. Serrate claimed as expenses for private school tuition ($263.00), school and athletic uniforms ($90.00), school lunches ($75.00), dentist ($30.00), doctor ($45.00), gifts ($75.00), allowance ($100.00), entertainment ($50.00), automobile insurance ($183.33), and automobile gasoline and repairs ($150.00).[7] Accordingly, the record supports a total child support obligation of $2120.33. Mr. Serrate's share of this obligation is $1738.67. Although Mr. Serrate contests the inclusion of private school tuition in the amounts for child support, we believe that the record supports the inclusion of this expense. Mrs. Serrate testified that Mr. Serrate asked that Bradley move back to Baton Rouge in the middle of the school year. To ease the disruption of the move Mrs. Serrate searched for a school that would approximate the school Bradley was attending in Tennessee. She testified that Bishop Sullivan High School had a similar wrestling program. She further testified that she discussed this decision with Mr. Serrate and he agreed. We also note that the record reveals that Michael attended a private boarding school in Tennessee. We believe that the particular needs of this child and the circumstances surrounding his move back to Baton Rouge support the inclusion of private school tuition in the award of child support.
In view of the needs of Bradley, the totality of the circumstances of Mrs. Serrate and Mr. Serrate, and considering that each of them has an obligation and the ability to contribute to the support of the child, we find no abuse of discretion in the trial court's award of $1,750.00 per month in child support.
For the reasons set forth, the judgment of the trial court awarding past due child support is amended to order the payment of $4,933.33. The judgment, as amended is affirmed.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] Judge Carl A. Guidry, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The $1,000.00 credit for September and October 1995 apparently consists of the $600.00 Mr. Serrate voluntarily paid and an additional $400.00 per month that he was ordered to pay in arrearages.
[3] The appellee also points out in brief that this error was conceded by appellee when appellant paid the arrearage.
[4] The appellant argues in brief that the trial court erred in failing to provide reasons for its deviation from the child support guidelines, citing our opinion in Aguilar v. Wilson, 597 So.2d 1186 (La.App. 1st Cir.1992). In Aguilar the trial court awarded $3000.00 per month child support for one child. We remanded the matter twice ordering the trial court to provide reasons for its deviation from the child support guidelines as mandated by LSA-R.S. 9:315.1(B). See also Aguilar v. Wilson, 607 So.2d 837 (La.App. 1st Cir.1992). In the instant case the trial court record clearly reveals an evidentiary basis for the award and does not require a remand.
[5] Mr. Serrate testified that $10,911.00 is his monthly base pay and that he may or may not have the opportunity to earn more depending on the hours he is able to work. His August 31, 1995 pay stub indicates that his year-to-date earnings were $103,522.00, which resulted in an average monthly income of $12,940.37 in the first eight months of 1995.
[6] In Rosenbloom, the court held that "the trial court's procedure of taking a flat percentage of the amount above the guideline's maximum without concern and discretion by the court in balancing the needs and lifestyle of the child clearly leads to an excessive award." Id. at 880. In Colvin v. Colvin, 94-2143 (La.App. 1st Cir. 10/6/95), 671 So.2d 444, writ denied, 95-2653 (La. 1/5/96), 667 So.2d 522, this court impliedly accepted the trial court's method of extrapolating from the guidelines to determine child support however, this approach was rejected in Preis v. Preis, 93-569 (La.App. 3d Cir. 2/2/94), 631 So.2d 1349.
[7] We are not including the monthly expenses claimed by Mrs. Serrate for vacations ($200.00) or miscellaneous ($25.00) as these amounts were clearly rejected by the trial court.