719 So.2d 551 (1998)
Sherry SAVOIE-MOORE
v.
David S. MOORE.
No. 98-CA-0235.
Court of Appeal of Louisiana, Fourth Circuit.
September 16, 1998.
*552 Raymond C. Burkart, Jr., New Orleans, for Plaintiff/Appellant Sherry Savoie-Moore.
Lindsey M. Ladouceur, Ladouceur and Ladouceur, L.L.C., New Orleans, for Defendant/Appellee David S. Moore.
Before KLEES, LOBRANO and MURRAY, JJ.
*553 MURRAY, Judge.
Sherry Savoie-Moore appeals a judgment entered in favor of David S. Moore, in which the trial court deviated from the child support guidelines, and set Mr. Moore's support obligation below the statutory amount. For the following reasons, we affirm.

FACTS:
Sherry Savoie-Moore and David S. Moore were married on February 21, 1988. Two children were born of the marriage: Farrell on September 14, 1990, and Carson on October 12, 1993.
On March 13, 1996, Mrs. Moore filed a Petition for Divorce seeking joint custody of the children, child support, alimony pendente lite, use and occupancy of the family home, and attorney's fees. After several procedural delays, a show cause hearing was had on April 10, 1996. The parties entered into an interim consent judgment with the following provisions[1]: Mr. Moore was to pay Mrs. Moore interim child support of $1,119.00 per month, retroactive to the date of filing, subject to credit for amounts already paid. Additionally, Mr. Moore was to pay $42.00 per month for dance lessons and to maintain health insurance on the children. He also was to maintain health insurance on Mrs. Moore as alimony pendente lite. An interim plan of joint custody provided that Mrs. Moore was designated as the interim domiciliary parent, and that Mr. Moore would have custody every other weekend from Friday after school until Sunday evening. He would also have custody every Tuesday, Wednesday, Thursday and Friday from after school until 8 p.m. By agreement of the parties, the children would stay overnight with Mr. Moore on one of the week nights. Mutual injunctions issued restraining the parties from harassing each other or from encumbering or disposing of community property.[2]
Mr. Moore filed a rule for permanent custody, child support and appointment of a mental health evaluator on July 23, 1996. He sought sole custody of the children alleging that he had physical custody of them approximately sixty percent of the time, and was the primary caregiver. In the event he was granted sole custody, Mr. Moore sought termination of his child support obligation. Alternatively, he sought to be designated as the primary domiciliary parent, with Mrs. Moore ordered to pay child support. The object of the rule was to have the permanent child support award reduced from the interim amount of $1,119.00 per month.
A health care evaluator was appointed. Although the evaluator testified on August 27, 1996, the hearing was terminated abruptly with an off the record discussion. The rule, although eventually re-set for hearing on October 29, 1996, was continued without date because the parties were attempting to negotiate a compromise. When these attempts were unsuccessful, Mr. Moore once again moved to have the matter heard. Following several continuances, a hearing was held on July 7, 1997.
A judgment was signed July 30, 1997, setting Mr. Moore's child support at $750.00 per month, inclusive of all educational and health insurance obligations. The judgment also provided that Mrs. Moore was to obtain any future educational tuition loans for the children in her own name.
Mrs. Moore's motion for new trial was denied, and this appeal followed.[3]

DISCUSSION:
Mrs. Moore contends that the trial court erred in not granting her motion in limine regarding alleged incomplete discovery responses. She argues that Mr. Moore had an obligation to amend prior responses to discovery if he obtained further information, or if information changed. We disagree.
Louisiana Code of Civil Procedure art. 1428 provides that a party who responds to discovery is under no duty to supplement his response with information thereafter acquired *554 except if he gains knowledge of persons having knowledge of discoverable matters, he acquires expert witnesses who are to testify at trial, he discovers that answers given were not correct, or that answers which were correct when given are no longer correct. The statute specifically states that "[a] duty to supplement responses may be imposed by order of the court, agreement of the parties, or at any time prior to trial through new requests for supplementation of prior responses." La.Code Civ. Proc. art. 1428(3).
Because Mr. Moore provided copies of every document he intended to introduce prior to the hearing, the court denied the motion in limine. A trial court has great discretion with regard to admission of evidence when a party objects on the ground that his opponent failed to supplement discovery. Chapman v. Regional Transit Authority/TSMEL, 95-2620 (La.App. 4 Cir. 10/2/96), 681 So.2d 1301.
The discovery propounded by Mrs. Moore on March 20, 1996, requested information and documents from 1993 to the present (March 20, 1996). Mrs. Moore does not deny that this discovery was answered, and the record contains no evidence that she made new requests for supplementation of the prior responses. Therefore, Mr. Moore was not required to supplement his discovery response. The trial court did not abuse its discretion in denying Mrs. Moore's motion.
Mrs. Moore also assigns as error two evidentiary rulings by the trial court. First, she contends that the court erred in admitting in evidence Mr. Moore's statement of income and expenses. She argues that the statement should have been excluded because she received no supporting documents for it in discovery.
This argument is without merit. As noted above, Mr. Moore adequately answered Mrs. Moore's discovery requests prior to trial. In addition, while a party is required to submit a verified income statement and to document current and past earnings, there is no requirement that documentation for expenses be provided. See La. R.S. 9:315.2.
Second, Mrs. Moore argues that the trial court erred in admitting a 1995 income tax return which Mr. Moore claimed to be his 1996 return. Mr. Moore explained that the return he submitted to the court was indeed a 1995 form, but that he had written on it the amounts he actually submitted on his 1996 return because he did not have time to copy the actual 1996 return before he mailed it. Mr. Moore did submit copies of his 1996 W-2's and earnings statements. Also, a representative of his former employer testified at trial as to the authenticity of his 1996 and 1997 pay records, thus substantiating the income he reported on the "1996" return. Apparently the court accepted Mr. Moore's explanation as reasonable and admitted the return.[4]
A trial court has vast discretion in deciding to admit or exclude evidence, and such a decision will not be upset on appeal absent an abuse of that discretion. Brodtmann v. Duke, 98-0257 (La.App. 4 Cir. 2/11/98), 708 So.2d 447, writs denied, 98-0645, 98-0658 (La.4/24/98), 717 So.2d 1177; Dixon v. Winn-Dixie Louisiana, Inc., 93-1627, p. 4 (La.App. 4 Cir. 5/17/94), 638 So.2d 306, 312. We find no abuse of discretion by the trial court in admitting the 1996 tax return.
Mrs. Moore also argues that the trial court erred in failing to follow the child support guidelines. A court may deviate from the guidelines if their application would not be in the child's best interest or would be inequitable to the parties. La.Rev.Stat. 9:315.1 B. Louisiana Revised Statute 9:315.1 C, which gives guidance to a court in determining if a deviation is justified, provides in pertinent part:
C. In determining whether to deviate from the guidelines, the court's considerations may include:
* * * * * *

*555 (4) An extraordinary community debt of the parties.
* * * * * *
(7) Any other consideration which would make application of the guidelines not in the best interest of the child or children or inequitable to the parties.
The trial court herein found that there were extraordinary community debts, for which Mr. Moore is primarily responsible. This finding is supported by the record.
Mr. Moore testified that there was approximately $25,000 in community debt. He had been able to make payment arrangements with some of the community creditors. Although he juggled his obligations and borrowed from his parents, he testified that there simply was not enough money for him to service the debt and pay child support as provided in the interim agreement. He, therefore, elected to pay the child support. The evidence shows that he had not missed a single child support payment, and had, in fact, paid amounts for the children over and above the support obligation set forth in the consent judgment. He testified that he had considered bankruptcy as an option but that he was trying to avoid doing so. The court apparently found his testimony credible.
In cases of joint custody a court shall consider the amount of time that a child spends with the non-domiciliary parent as a basis for determining the amount of child support to be paid during that time, taking into consideration the continuing expenses of the domiciliary parent. La.Rev.Stat. 9:315.8 E.
The trial court found that Mr. and Mrs. Moore exercised a true "fifty-fifty" shared custody arrangement. The record supports this finding. Mr. Moore testified that the interim custody plan was creating a hardship on the children, so that he and Mrs. Moore agreed to deviate from that plan. Consequently, they verbally agreed that Mrs. Moore would have the children on Monday and Wednesday nights, Mr. Moore would have them on Tuesday and Thursday nights, and that they would alternate weekends from Friday through Sunday. Although Mrs. Moore did not refute Mr. Moore's testimony as to the basic plan, she testified that his previous job required that he work from 8:00 a.m. to 4:30 p.m. on some Saturdays. She testified that she would keep the children on the Saturdays Mr. Moore was scheduled to work on his weekend with them. In connection with this testimony, she entered in evidence a schedule indicating which days Mr. Moore was to work as the manager on duty. Mr. Moore refuted this testimony. He testified that he arranged to swap with co-workers so that he could be with the children, and work on the days when he did not have them. He also testified that he changed jobs in June of 1997, so that he no longer was scheduled to work on weekends.
There is no hard and fast rule to determine whether a reduction in support is warranted based on the percentage of time the children spend with either parent. See Matter of Burkenstock, 95-586, p. 4 (La.App. 5 Cir. 12/13/95), 666 So.2d 1168, 1170. In Krueger v. Krueger, 96-684 (La.App. 5 Cir. 12/30/96), 686 So.2d 1051, the court affirmed a trial court's deviation from the guidelines, reducing the father's support obligation by fifty percent, based on the fact that the child spent fifty percent of the time with his father.
Deviations from the guidelines shall not be disturbed by an appellate court absent a finding of manifest error. La.Rev.Stat. 9:315.12.1. The trial court determined that a deviation from the guidelines was warranted, and ordered Mr. Moore to pay support of $750.00 per month.
Based on the evidence in the record, Mr. Moore's child support obligation under the guidelines is $1221.14 per month.[5] However, *556 the evidence of the equal sharing of custody and the extraordinary community debt support the trial court's conclusion that a mechanical application of the guidelines in this case is inequitable. The trial court's determination that Mr. Moore's child support obligation should be $750.00 per month is not manifestly erroneous.[6]
In her final assignment of error, Mrs. Moore claims that the trial court erred by not including a calculation of the amount of the support obligation under the guidelines in its reasons for judgment. Louisiana Revised Statute 9:315.1 B provides that a court deviating from the guidelines must give specific written or oral reasons for doing so. These reasons should include a finding as to the amount of support that would have been required under a mechanical application of the guidelines. The trial court's failure to include this calculation in its written reasons was error. Because the record is complete, this Court has calculated support under the guidelines and included that calculation in this opinion. The trial court's oversight, therefor, was harmless.
On appeal, counsel for Mr. Moore has requested that this Court cite Mr. Raymond Burkart, Mrs. Moore's counsel, for contempt for violation of Rule of the Uniform Rules of the Courts of Appeal. That rule provides that briefs submitted to the Court "shall be courteous, free from vile, obscene, obnoxious, or offensive expressions, and free from insulting, abusive, discourteous, or irrelevant matter or criticism of any person, class of persons or association of persons, or any court, or judge or other officer thereof, or of any institution." Violation of the Rule shall subject the author of the brief to punishment for contempt, and to having such brief returned.
We have carefully reviewed Mr. Burkart's brief, and conclude that his choice of words, in some instances, was intemperate. For instance, he has suggested that evidence was misleading or fabricated in an attempt to "hoodwink" a new judge. However, we cannot say that it rises to the level that warrants the imposition of sanctions other than an admonishment. An attorney's zeal must be tempered by judgment. Unfounded "suggestions" of attorney misconduct have no place in an appellate brief.
AFFIRMED.
NOTES
[1] This consent judgment was signed on July 16, 1996.
[2] Hearing on the remaining issues was continued to August 27, 1996. A final judgment of divorce was entered on December 11, 1996.
[3] The judgment on the motion for new trial indicates the hearing was on July 6, 1997. This is obviously in error because the initial hearing was July 7, and the transcript of the hearing is dated August 13, 1997.
[4] In response to Mrs. Moore's objection to the return, the trial court noted that it would "look at all of that and take it into consideration."
[5] Mr. Moore's attorney submitted a worksheet to the court. She listed Mr. Moore's income as $3,750.00 per month ($45,000 annual), and Mrs. Moore's income as $2363.55 per month. It is not clear from the record from where this figure was derived. We find that the record supports an income of $2161.50 per month for Mrs. Moore based on a $25,000 annual income. The monthly adjusted gross income is therefore $5,911.50, and, according to the guidelines, the basic child support obligation is $1218.00 for two children. To this amount is added the child care costs, health insurance costs, and tuition, for a total child support obligation of $1938.31. Mr. Moore's share of the obligation, per the guidelines, is 63% and Mrs. Moore's is 37%.
[6] Mrs. Moore did not submit a worksheet at the time of trial. Her attorney attempted to submit a worksheet at the motion for new trial to which Mr. Moore's attorney objected. The court allowed her to submit a proposed judgment and reasons for judgment which it said it would consider under advisement. A worksheet was attached to the proposed judgment. However, the motion for new trial was ultimately denied. Thus, the worksheet submitted by Mrs. Moore is not properly in evidence and we will not consider it.